UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JAVON JOHNSON,                                        Civ. Action No: 22-CV-3780

              Plaintiff,                 **COMPLAINT AND**
                                         **JURY DEMAND**
        -against-

KENNETH REECE,

              Defendant.
------------------------------------------------------------X

      Plaintiff, JAVON JOHNSON (herein "Plaintiff") by his attorneys, The Linden Law Group, P.C., as and for his complaint against the Defendant KENNETH REECE, ("Reece"), alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages for breach of contract and other New York common law causes of action. The allegations below support numerous additional causes of action, but for the sake of expediency, Plaintiff proceeds as follows.

## JURISDICTION AND PARTIES

2. This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states.

3. The venue of this action is proper in this judicial district because the Defendant carried out his subject business activities within this District, giving rise to the claim within the Southern District of New York, 28 U.S.C. §1391.

4. Plaintiff is a natural person over eighteen years of age and is a citizen of the State of Connecticut.

5. Upon information and belief, Defendant Reece is a natural person and is a citizen of the State of New York, County of New York.

**FACTS**

6. Prior to the year 2020, Plaintiff and Defendant were engaged in numerous business transactions, unrelated to the business alleged herein.

7. In or around the middle of 2020, Defendant asked Plaintiff whether Plaintiff would be interested in investing in a cryptocurrency exchange startup venture.

8. The proposed cryptocurrency exchange business was variously known as BloxXwop LLC, a New York State Limited Liability Company and/or Blox Financial OU, a New York company (hereinafter collectively referred to as "BloxXWop"). BloxXWop and Blox Financial each have their principal places of business in the State of New York, County of New York.

9. Reece represented to Plaintiff that BloxXWop had enormous potential, and that he was hugely successful as CEO of his Solareum home renewal business worth $300M.

10. In an effort to induce Plaintiff to invest in BloxXWop, Reece also told Plaintiff that Reece was involved in a business selling solar panels and that the parent company of BloxXWop was worth $300 Million dollars, and that Reece was the CEO of same.

11. Based on both the past successful business history between the parties and Reece's other purported business success, Reece offered Plaintiff the opportunity to invest in BloxXWop.

12. In furtherance of the proposed venture, Reece gave Plaintiff a "pitch deck" (i.e., written and Powerpoint promotional materials) and Reece represented to Plaintiff that after a year, BloxXWop would do $500 million dollars in volume per day and that as an investor, Plaintiff would receive .01% of that business. Reece further represented that 70% of the

profits would be distributed as dividends to shareholders (of which Plaintiff would be one) and that the other 30% would be reinvested in the company.

13. Based on Reece's representations, on October 22, 2020, Plaintiff bought an initial 12.5% equity share in the company for One Hundred and Fifty Dollars ($150,000.00). Later in November of 2020, at Reece's behest and urging, Plaintiff invested the equivalent of another Thirty Five Thousand Dollars ($35,000.00) (via Bitcoin) for a 15% share in BloxXWop. Plaintiff's total investment was One Hundred Eighty-Five Thousand Dollars ($185,000.00).

14. In a cell phone text exchange on November 5, 2020, Plaintiff questioned Reece as to language in a BloxXWop shareholder's agreement concerning distribution of dividends, which did not say that "dividends are paid monthly, 70% of profits, 30% goes back into the company like you told me in Darien." Reece responded to Plaintiff's inquiry by stating, "As we ramp up we might want to change to 80/20 on the other side you might want to hold dividends and disperse quarterly due to tax revenue changes in laws." Reece further represented, with reference to the aforementioned shareholder's agreement, "In short that broad language is standard, 70/30 isnt something we're going to change anytime soon, however and if we do you have a vote. A significant one, I might add." In reply to Plaintiff's response that Plaintiff "was excited for the exchange to launch," Reece stated "very enthused."

15. Reece made several false representations to Plaintiff concerning the enterprise, each using electronic communications:

   a. On November 18, 2020 as further inducement, Reece stated to Plaintiff (via cell phone text exchange) with regard to the mass influx of exchange users that will

3

grow the company, "[i]t's going to be a run history as never seen. I'm saying that as a cautious person. Bitcoin will be 50 by this time next year minimum from what I gather."

b.      In addition, and in response to a request from Plaintiff concerning whether there were "any updates with [BloxXWop]", Reece responded, "Same. Dev[elopment] call Friday. Will have you added to both biweekly. We have about 60 BTC of liquidity on day 1 btw.";

c.      Plaintiff then requested assurance from Reece that "it is very safe to expect to return my initial investment within first two years." Reece responded, "Not sure you've ever used any of the exchanges not in the top 100 but I'd generously say we're better." Plaintiff responded that he had never used exchanges but that he had used a website with brokers who were trustworthy. Reece responded that "Yes and some. My expectations are that in 3 years we'll be top 50 and I personally feel top 20. You can look at CMC and see those numbers and do the numbers on your own.";

d.      On October 23, 2020, Plaintiff asked Reece via cell phone text exchange when BloxXWop marketing would start. Reece responded "Second week of November. Influencers e mail campaigns, social campaign, then press release. Announce launch date then turn it up for the first 3 month." Plaintiff responded that he would look into influencers that had a strong investor demographic, and Reece responded that Plaintiff should "look for the younger crowd 18-35. Robin Hood demo";

e.      In a cell phone text exchange on October 19, 2020, Plaintiff inquired of Reece, what the dividend frequency would be and Reece replied, "monthly," and

        Plaintiff asked what the long term investment opportunity was of the enterprise and for a better understanding of how everything would play out financially. Reece responded, "First fiscal year 1 cautiously expecting 3.6 million in revenue. That would put us in the bottom 50 exchanges in the world. We're the opposite of optimist when it comes to modeling expectations.";

        f.    Then in another text exchange between Plaintiff and Reece, Plaintiff expressed confusion at what the rankings of bitcoin companies meant. Reece responded that "if you're #100 you're doing 10's of millions daily in transactions. End gold is bank charter. The money made is the easier by product and low hanging fruit.";

        g.    In a final text communication between Plaintiff and Reece, Plaintiff told Reece he was going to have his accountant review documents pertaining to BloxXWop. Reece responded to Plaintiff that "in short, you got a sweetheart deal coming in under the soft cap where capital has already been distributed. I have leeway but not that much when it comes down to dilution of equity. It's a strong conversation to have and it definitely must make sense as you've seen a piece of the round table action before.".

16.    It is verily believed that the foregoing statements by Reece were made with knowing and willful knowledge of their falsity, and with the knowledge that Reece was not in fact, pursuing the cryptocurrency exchange business, but merely was (falsely) inducing Plaintiff's confidence in this purported enterprise.

17.    Reece offered Plaintiff a position on BloxXWop's Board but Plaintiff declined because he wanted to just be an investor.

18. On or after October 22, 2020, a number of meetings occurred between Reece and members of a development team that was purportedly developing a website for BloxXWop. These meetings were attended by Plaintiff and an individual known as Bibiana Aquero, who was serving in the capacity of Chief Operating Officer. These meetings were held remotely via Zoom.

19. An alleged partner of Defendant Derek Van Vliet attended the aforementioned meetings and showed Plaintiff spreadsheets purportedly reflecting the success, and/or prospective profits and success of BloxXWop. In a cell phone text on October 22, 2020, Reece represented to Plaintiff that Derek (Van Vliet) "should be wrapping up in 15…" and that the three would have a "finance chat when he gets out, good banter to learn somethings." Based on a further cell phone text exchange on October 22, 2020, Van Vliet was, in fact, present for the aforesaid October 22, 2020 meeting.

20. Per Reece's representations to Plaintiff, dividends were supposed to have been paid monthly and at the aforementioned meetings, representations of "progress" were made, by Reece and members of the "development team."

21. Eventually, in or about April, 2021, Plaintiff stopped participating in the meetings because BloxXWop was not doing the business that Reece had represented it would, and was not paying any dividends.

22. Approximately two months later, BloxXWop's COO told Plaintiff that Reece had sexually harassed her. In or around June, 2021 and based on this allegation and the absence of the dividends that Plaintiff expected based on Reece's representations, Plaintiff contacted Reece and informed Reece that he, Plaintiff, wanted Reece to buy out Plaintiff's shares in BloxXWop.

23. After numerous negotiations between the parties over the ensuing months, in or around February, 2022, Plaintiff and Reece entered into a written Stock Sale and Purchase Agreement with a proposed extended "Closing Date" of March 30, 2022. Annexed hereto as **Exhibit "A"** is a copy of the offered Agreement. Plaintiff agreed to a 30-day extension of the original February 28, 2022 closing date.

24. A week prior to March 30, 2022, Plaintiff and Reece had arranged to meet regarding the stock buyout, but Reece cancelled this meeting.

25. Plaintiff sent a number of messages to Reece attempting to confirm that impending buyout, and Reece confirmed that the buyout would take place.

26. Among the many false representations made by Reece to Plaintiff were Reece's assurances to Plaintiff, made using cellular phone text communications, that the stock buyout would occur within time frames agreed to by Reece and Plaintiff. On March 15, 2022, Plaintiff asked Reece if everything was going as planned with BloxXWop and whether Reece and Plaintiff were still on schedule for a closing on March 30, 2022. Reece responded affirmatively and represented that everything was going as planned. However, in the same communication, Reece then informed Plaintiff that the closing would not occur on March 30, 2022. It is verily believed that Reece never had the intention to go forward with the stock buyout and that his representations to Plaintiff in this regard were willfully false.

27. Reece made additional false representations to Plaintiff in the March 15, 2022 communication that Reece was planning on taking BloxXWop public on the NASDAQ exchange, and offered Plaintiff a June 6, 2022 "target" for a buyout date. In response, Plaintiff objected.

28. Reece continued to make false representations to Plaintiff, including but not limited to a

purported Initial Public Offering related to BloxXWop. On March 21, 2022, Reece communicated with Plaintiff via cell phone text, forwarding a "Guide to Every Step in the IPO Process" and telling Plaintiff that the document would give Plaintiff a "better understanding" for a lunch between Reece and Plaintiff.

29. On April 1, 2022, in another text communication, Plaintiff reminded Reece that the March 30, 2022 buyout extension had expired. Reece offered to meet with Plaintiff in response, but Plaintiff declined and informed Reece that the latter was in breach of contract.

30. At all times alleged above and to date, BloxXWop's website, though represented to Plaintiff that BloxXWop would do a high volume of business, never became functional. It came to Plaintiff's attention that another female employee of BloxXWop filed police reports against Reece for sexual harassment/assault, and that other employees of the company never got paid based on their purported status as "shareholders.

31. Upon information and belief, of all the "shareholders" of BloxXWop, Plaintiff is the only individual that invested any money in this venture.

32. To date, Defendant has never repaid Plaintiff his investment as agreed and Plaintiff suffered and continues to suffer monetary damages that will be sought at trial.

## COUNT I
### Breach of Contract

33. Plaintiff repeats and realleges each and every allegation above and incorporate same herein.

34. The parties entered into a written Agreement as represented in **Exhibit "A"** after an offer and acceptance of same.

35. Consideration was tendered by Plaintiff with an agreed closing date of March 30, 2022.

36. By reason of all of the foregoing, Defendant breached the Contract between the parties by

refusing and/or failing to perform thereon.

37. Plaintiff has suffered actual and compensatory damages as a result of Defendant's breach.

## COUNT II
### *Breach of Fiduciary Duty*

38. Plaintiff repeats and realleges each and every allegation above and incorporates same herein.

39. Defendant had a fiduciary duty based upon a trust relationship due to prior numerous business transactions between the parties.

40. Though duly demanded, defendant had the duty to return funds to plaintiff.

41. Defendant's refusal to return said funds was a breach of fiduciary duty.

## COUNT III
### *Breach of Implied Covenant of Good Faith and Fair Dealing*

42. Plaintiffs repeat and reallege each and every allegation above and incorporate same as if fully set forth herein.

43. Defendant was under an obligation to deal fairly with the Plaintiff and in good faith at all times relevant herein both before and after his transactions with Plaintiff.  Defendant instead conducted himself so as to specifically damage or deny Plaintiff's the return of is funds.

44. As such, Defendant willfully or negligently breached a covenant to Plaintiff in so acting.

45. Plaintiff has suffered damages proximately related to Defendant's breach of his implied covenant of good faith and fair dealing.

46. Plaintiff suffered actual and compensatory damages from Defendants' breach.

## COUNT IV
### *Unjust Enrichment*

47. Plaintiff repeats and realleges each and every allegation above and incorporate same herein.

48. This Cause of Action is asserted for restitution of Plaintiff's funds based upon common law unjust enrichment.

49. Plaintiff conferred funds the benefit of his funds on Defendant.

50. By unjustly retaining Plaintiff's funds, defendant was unjustly enriched.

51. Defendant obtained the benefit of plaintiff's money and did not return said funds, though duly demanded.

## COUNT IV
### Accounting

52. By virtue of the Agreement between the parties and law, and by Defendant's aforementioned wrongful acts, Plaintiff demands a full, unfettered and timely accounting for all transactions and/or monies collected and expended by Defendant pursuant to the Agreement and transactions stated herein.

**WHEREFORE**, Plaintiff demands judgment against the Defendant, for actual, consequential, and incidental damages as follows:

i. Actual and compensatory damages in excess of the sum of TWO HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($225,000);

ii. Interest, costs, and disbursements;

iii. Such other relief as the court may deem just proper.

## **DEMAND FOR A TRIAL BY JURY**

Plaintiff demands a trial by jury in this action of all issues so triable.

Dated: New York, New York
       May 10, 2022

        THE LINDEN LAW GROUP, P.C.

        *Jeffrey Benjamin*

        By:   Jeffrey Benjamin, Esq. (JB-9536)
        Attorney for Plaintiff
        JAVON JOHNSON
        5 Penn Plaza, 23rd Floor
        New York, New York 10001
        (212) 835-1532

## VERIFICATION

STATE OF CONNECTICUT   )
                                                   :ss
COUNTY OF NEW HAVEN    )

JAVON JOHNSON being duly sworn, depose and say:

That deponent is the plaintiff herein; deponent has read the foregoing **VERIFIED COMPLAINT** and knows the contents thereof: that the allegations are true and accurate to the best of the deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes to be true.

*[signature]*
JAVON JOHNSON

Subscribed and Sworn to before me this
9th day of May, 2022.

*[notary seal and signature]*
NOTARY PUBLIC

Christine Marie Panciera
Notary Public, State of Connecticut
My Commission Expires Aug 31, 2026